# Exhibit A

TS

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| **STATE OF MICHIGAN** | | | **CASE NO.** |
|---|---|---|---|
| 16th | **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | 2 0 1 9 $\vert$ 19- 0 0 4 7 $^{NZ}$ 3 2 - N 7 |

| **Court address** | **Court telephone no.** |
|---|---|
| 40 N. Main, Mt. Clemens, MI 48043 | 586-469-5100 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| ASLISA SHEFKE, as Next Friend OF<br>JOHN DOE, A MINER | **v** | MACOMB COUNTY INTERMEDIATE SCHOOL<br>DISTRICT BOARD OF EDUCATION |
| Plaintiff's attorney, bar no., address, and telephone no.<br>DAVID E. CHRISTENSEN (P45374)<br>SARAH S. STEMPKY KIME (P74167)<br>CHRISTENSEN LAW<br>25925 Telegraph Road, Suite 200, Southfield, MI 48033<br>(248) 213-4900/ Fax (248) 213-4901 | | c/o John A. Bozymowski, President<br>44001 Garfield Road<br>Clinton Township, MI 48038-1100 |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.                    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>NOV 2 0 2019 | Expiration date*<br>FEB 1 9 2020 | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

| | | **SUMMONS** |
| --- | --- | --- |
| **PROOF OF SERVICE** | Case No. 19- | -NZ |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

| CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE |
| --- |

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint.
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _Demand for Jury Trial and Notice of E-Filing_
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| MACOMB COUNTY INTERMEDIATE SCHOOL DISTRICT BOARD OF ED. | c/o John A. Bozymowski, President 44001 Garfield Road, Clinton Township, MI 48038-1100 | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
| --- | --- | --- | --- | --- |
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                    Date

My commission expires: _____ Signature: _____
                                    Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

| ACKNOWLEDGMENT OF SERVICE |
| --- |

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                                    Attachments

_____ on _____
                                            Day, date, time

_____ on behalf of _____ .
Signature

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB**

ALISA SHEFKE, as Next Friend of
JOHN DOE, a minor,

       Plaintiff,

vs.

MACOMB COUNTY INTERMEDIATE SCHOOL
DISTRICT BOARD OF EDUCATION

       Defendant.

_____/

2019 - 0 0 4 7 3 2 - N Z

Case No.: 19-     -NZ
Hon.

JAMES M. BIERNAT, JR.

RECEIVED
NOV 2 0 2019
FRED MILLER
Macomb County Clerk

DAVID E. CHRISTENSEN (P45374)
SARAH S. STEMPKY KIME (P74167)
CHRISTENSEN LAW
Attorneys for Plaintiff
25925 Telegraph Road, Suite 200
Southfield, MI 48033
(248) 213-4900/Fax (248) 213-4901
dchristensen@davidchristensenlaw.com
skime@davidchristensenlaw.com

_____/

**COMPLAINT**

There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in the complaint.

_____
David E. Christensen

    NOW COMES Plaintiff, ALISA SHEFKE as next friend of JOHN DOE, a minor, by and

through his attorneys, CHRISTENSEN LAW, and states as follows;

## JURISDICTION AND VENUE

1.      Defendant MACOMB COUNTY INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION operates an accredited public intermediate school district (hereinafter referred to as "MISD") authorized by the statutes of the State of Michigan.

2.      Plaintiff-child, JOHN DOE, is a minor child that is filing this action through his Next Friend, ALISA SHEFKE, who resides in Macomb County, State of Michigan.

3.      The amount in controversy exceeds $25,000.00.

## FACTUAL ALLEGATIONS

4.      At all times relevant hereto, Plaintiff-child Doe suffered from Autism Spectrum Disorder—he is completely unable to speak (a/k/a 'non-verbal'), has diminished cognitive capacity, and consequently exhibits episodes of "self-injurious behavior" ("SIB").

5.      Autism Spectrum-specific SIB often includes, but is not limited to, head banging, hand or arm biting, hair, teeth and fingernail pulling, eye gouging or poking, face or head punching, skin picking, scratching or pinching, forceful head shaking or slamming, and dislocation of joints. Physical harm includes, but is not limited to, bruising, lacerations, bleeding, bone fractures and breakages, and other tissue damage, including brain injury in severe cases, like this case.

6.      At all times pertinent hereto, Plaintiff-child Doe was a fourth-grade student at Keith Bovenschen School that was operated, staffed, and managed by the Defendant MISD Board of Education.

7.      While attending Keith Bovenschen School, Plaintiff-child Doe was assigned a specially trained team of staff members that were frequently required to employ de-escalation techniques on Plaintiff-child Doe when he was overtaken by his SIB, thereby assuming a duty of

2

care as a trained specialist and/or as a reasonable person to act reasonably to protect him based on his Autism Spectrum Disorder, history of SIB, and the student-school special relationship.

8.  Defendant was fully aware of the frequency and severity of Plaintiff-child's SIB at Keith Bovenschen School, as evidenced by the regular communication with Plaintiff-child's mother describing his frequent episodes of SIB at school.

9.  On September 14, 2017, Plaintiff-child's mother, Alisa Shefke, informed Johanna Mexico, the Defendant's school psychologist, that Plaintiff-child's SIB had resulted in a chipped tooth and a deviated septum.

10. On September 26, 2017, Plaintiff-child's mother emailed Julie Stuckey, Plaintiff-child's classroom teacher, asking whether Plaintiff-child Doe was wearing a helmet to protect his head during SIB episodes.

11. One day later, on September 27, 2017, Defendant's staff called Plaintiff-child Doe's mother because he was bleeding from the forehead from hitting himself during a SIB episode.

12. Following this September 27, 2017 contact, Alisa Shefke asked Catherine Sulkowski, the school principal, whether the school staff would perform protective holds on Plaintiff-child Doe during SIB episodes to keep him safe, and she replied that; "what [Alisa] described was a restraint and that would not be something we would do."

13. There are multiple restraint techniques employed by professionals in this field that are safe for the child, and safeguard a person engaged in SIB, and Defendant knew of these available techniques.

3

14.     On September 28, 2017, Alisa Shefke emailed Defendant a second time regarding the prospect of properly and safely restraining Plaintiff-child Doe during extreme cases of SIB. The question went unanswered by Defendant.

15.     Once again, on September 29, 2017, Alisa Shefke asked to discuss the prospect of the school using restraint techniques on Plaintiff-child Doe; once again, her question went conspicuously unanswered.

16.     Defendant observed and documented the increasing frequency and severity of SIB episodes and its injuries.

17.     Plaintiff-child Doe was ten years old at that time, and growing bigger and stronger, and thereby more likely to seriously injure himself during SIB episodes.

18.     Following Plaintiff-child's string of SIB episodes, a "Positive Behavior Support Plan" for Plaintiff-child Doe was drafted and adopted by school staff on October 4, 2017. The "analysis of data" provided that Plaintiff-child's "banging [of] head" was increasing in frequency:

   a.   On May 1, 2017, it was noted that Plaintiff-child's self-injurious head-banging happened 13 times per week.

   b.   On August 10, 2017, it was noted that Plaintiff-child's self-injurious head-banging happened six times per week.

   c.   On October 4, 2017, it was noted that Plaintiff-child's self-injurious head-banging increased to 15 times per week.

19.     Despite Defendant's notice of the increased frequency of self-injurious behavior, the Positive Behavior Support Plan drafted and adopted by Defendant did *not* include a proposal for administering emergency seclusion and emergency restraint techniques, pursuant to MCL 380.1307, and Defendant *refused* to incorporate such a plan, even when it was repeatedly

suggested by Plaintiff-child's mother and was authorized by statute to safeguard the health of the child in the custody and care of the Defendant.

20.     Michigan law provides schools like Defendant's school explicit measures for putting an Emergency Intervention Plan (a physical restraint plan) into place, stating in relevant part:

    a. If a pupil exhibits a pattern of behavior that poses a substantial risk of creating an emergency situation in the future that could result in the use of emergency seclusion or emergency physical restraint, school personnel **should develop** a written emergency intervention plan to protect the health, safety, and dignity of the pupil. The emergency intervention plan should be developed in partnership with the parent or guardian by a team that includes a teacher, an individual knowledgeable about the legally permissible use of emergency seclusion and emergency physical restraint, and an individual knowledgeable about the use of positive behavioral intervention and support to eliminate the use of seclusion and restraint. MCL 380.1307e(a).

21.     Defendant wholly refused and failed to create  and/or implement an Emergency Intervention Plan in violation of MCL 380.1307e(a).

22.     Michigan law also provides instruction for how trained school staff should administer emergency seclusion and restraint techniques, stating in relevant part:

    a. "Emergency seclusion and emergency physical restraint **shall** be performed in a manner that, based on research and evidence, is safe, appropriate, and proportionate to and sensitive to the pupil's severity of behavior, chronological and developmental age, physical size, gender, physical condition, medical condition, psychiatric condition, and personal history, including any history of physical or sexual abuse or other trauma." MCL 380.1307c(c).

23.     Despite Defendant's and its agents' notice of the increased frequency of Plaintiff-child's SIB and the increasing severity of his injuries due to his increasing strength, the 'Positive Behavior Support Plan' authored and adopted by Defendant did not adhere to MCL 380.1307 – the "Use of Seclusion and Restraint in Public Schools" -- by developing and following a plan for administering physical restraint techniques when Plaintiff-child Doe was injuring himself.

5

24.     Predictably, on October 9, 2017, Plaintiff-child was hitting his head against the wall and punching himself in the "upper nose area several times" over the course of 23 minutes in the classroom, while in his classroom at Defendant's school.

25.     During this SIB episode Defendant's staff actively sought to 'protect' Plaintiff-child Doe by escorting him to a mat on the ground and the wall and summoned the school nurse, yet the staff simply stood by and watched as the Plaintiff-child continued to beat himself in the head and pound it on the mat while no school employee offered any protective restraint or other measures to stop the SIB or mitigate his direct injuries.

26.     On October 10, 2017 (the next day), Plaintiff-child Doe underwent yet another episode of self-injurious behavior (SIB) where he beat himself for over **twenty minutes** ending in a seizure and a brain injury while the teacher, the school nurse and the school psychologist simply stood by and watched but refused to render any physical assistance to Plaintiff-child Doe as he literally beat his brains into a seizure and traumatic brain injury.

27.     The episode began at approximately 9:35 a.m. when Plaintiff-child Doe began beating himself in the head. After watching for ten minutes, the child's teacher, Julie Stuckey, called Johanna Mexico, the school psychologist, to the classroom at 9:45 a.m., which was a step contained in the Positive Behavioral Support Plan. The School nurse was called shortly thereafter.

28.     So, the Plaintiff-child's teacher Stuckey, his school psychologist Mexico, the school nurse, and an administrator made sure the Plaintiff-child was on a mat, but then simply stood by and watched Plaintiff-child Doe repeatedly smash himself in the head, face and back of his neck for another five minutes until arms went rigid, his fists clenched and shook, and his eyes rolled back, and he underwent a seizure that lasted 20 to 30 seconds. Finally some care was rendered and he was then taken to the hospital.

29.     Defendant's agent's actions of escorting the Plaintiff-child to the mat established an affirmative legal duty to protect Plaintiff-child Doe in a reasonable fashion, which was breached and caused serious damages to the Plaintiff-child.

30.     At no time did Defendant's agents discharge Defendant's duty to reasonably aid Plaintiff-child Doe, by, among other measures, utilizing emergency physical restraint techniques to protect Plaintiff-child Doe when his health and life were obviously imminently imperiled.

31.     Defendant also breached its lawful duty to follow MCL 380.1307 by failing to create and implementing a plan for physical restraint that would keep Plaintiff-child safe, uninjured and maintain his dignity.

32.     EMS was called to the school at 9:57 a.m. for the injured Plaintiff-child, and his parents were called at 9:58 a.m.

33.     Prior to EMS arriving at the school, Plaintiff-child urinated through two pull-up diapers and vomited. Plaintiff-child's eyes remained rolled back, he was non-responsive and vomited several more times. While Plaintiff-child was non-responsive, Defendant observed him sweat profusely as his skin turned flush-red.

34.     Plaintiff-child Doe was non-responsive for approximately five minutes, after which he awoke, appeared scared, and began to cry.

35.     Plaintiff-child was transported by ambulance to St. John Macomb-Oakland Hospital, where he was *diagnosed with a brain injury, including an acute left parietal subdural hematoma*.

36.     Michigan law provides that:

   a.   "**not later than the beginning of the 2017-2018 school year**, the board of a school district or intermediate school district or board of directors of a public school academy shall adopt and implement a local policy that is consistent with the state policy under this section." MCL 380.1307a. Such

7

a policy, under MCL 380.1307 is a plan for the use of seclusion and restraint.

37.     This law clearly states the deadline when Defendant MISD was required to implement a restraint plan applicable to Keith Bovenschen School before the 2017-2018 school year.

38.     Defendant failed to adopt and implement a restraint plan that was mandated by a Michigan law. That law is intended to protect the safety and dignity of Michigan children that are left in the care and custody of public schools every day.

39.     Additionally, under Michigan law, MCL 380.1307g, Defendant's agents, as individuals who may have to respond to an "emergency situation," were required to be trained in the use of restraint by the 2017-2018 school year.

40.     That because Defendant refused to adopt the required restraint plan for "emergency situations", Defendant's agents were never trained to execute restraint techniques, never informed that they may use restraint techniques, and therefore never applied restraint techniques when the above-mentioned emergency situations arose, including the most serious incident on October 10, 2017, when Plaintiff-child Doe engaged in SIB so severe that he suffered a seizure and was left with a serious and lasting brain injury. MCL 380.1370g.

41.     Finally, in May 2018, over seven months after Plaintiff-child Doe was injured in October 2017, Defendant developed a new plan that included the use of restraint in the event of an emergency situation like the one that occurred on October 10, 2017. It was too late; Plaintiff-child Doe had already sustained severe and life-changing injuries stemming from Defendant's refusal to take humane, meaningful, and lawfully required action.

8

## COUNT I--GROSS NEGLIGENCE

42.     Plaintiff-child hereby incorporate Paragraphs 1-41 as if fully set forth herein.

43.     Plaintiff-child Doe suffers from Autism Spectrum Disorder, resulting in non-verbal communication and a history of involuntary self-injurious behavior.

44.     Plaintiff-child was not negligent when he acted with the degree of care that would reasonably be expected of a child of similar age, intelligence, cognitive capacity, and experience under the circumstances prior to, and on, October 10, 2017.

45.     Defendant, at all times relevant hereto, was aware that Plaintiff-child Doe's SIB was regularly inflicting increasingly serious injuries to himself as he grew bigger and stronger, and therefore knew or should have known that he was eventually certain to inflict serious injuries, even life-threatening injuries, upon himself if professional restraint techniques were not employed by trained staff members to safeguard the child when his very predictable SIB erupted.

46.     That at all times pertinent hereto, Defendant's agents controlled the Plaintiff-child's location and activities throughout the entire day and thereby had a duty to restrain Plaintiff-child Doe from harmful SIB on October 10, 2017, based on the special relationships between the special needs student and teacher, and special education student and school-staff member including school psychologist, and/or special needs student and administrator.

47.     Further, Defendant had a duty to physically intervene to safeguard Plaintiff-child Doe from severe SIB on October 10, 2017, because the school personnel had assumed a duty to safeguard Plaintiff-child Doe when they actively sought to protect him by placing him on a mat during his SIB episodes and utilizing de-escalation measures, which utterly failed to mitigate his harm in any fashion, and were therefore unreasonable for those emergency circumstances.

48.     Utilizing professional physical restraint techniques were the only measures that would have safeguarded Plaintiff-child, and Defendant's agents breached their duty when they did not employ professional restraint techniques to safeguard the Plaintiff-child in the emergency situation on October 10, 2017, and earlier episodes.

49.     In light of Plaintiff-child Doe's well-known propensity to attempt to seriously injure himself through SIB, because Plaintiff-child Doe "exhibit[ed] a pattern of behavior that pos[ed] a substantial risk of creating an emergency situation", and the known facts that Plaintiff-child's SIB events and injuries were increasing in frequency and severity, Defendant assumed a legal duty to protect Plaintiff-child Doe when they took measures intended to stop the SIB episode by using verbal de-escalation techniques. Repeating the same failed techniques when the child is repeatedly getting injured was both unreasonable and amounted to gross negligence, particularly when (a) increasingly serious injuries were occurring more and more often while utilizing the failed verbal de-escalation techniques, and (b), very simple professional restraint techniques were widely known and utilized in special needs settings nationwide, and were expressly invoked by Michigan statutes, when emergencies like this one arise.   MCL 380.1307e(a).

50.     Failing to institute and utilize those measures to protect Plaintiff-child Doe constituted gross negligence, deliberate indifference to the protection, health and safety of Plaintiff-child Doe, and willful and wanton conduct, all of which shocks the conscience.

51.     Defendant's deliberate decision to forego mandatory training and utilization of professional restraint in emergency SIB circumstances, such as those that existed on October 10, 2017, displayed utter indifference to, and a conscious disregard for, the safety of Plaintiff-child Doe.

52.     Defendant made it impossible for their agents to discharge required restraint techniques on Plaintiff-child Doe because they declined to train their staff on such techniques. The Defendant's failure to train its staff in these potentially life-saving measures constituted gross negligence, deliberate indifference to the protection, health and safety of Plaintiff-child Doe, and willful and wanton conduct, all of which shocks the conscience.

53.     By failing to properly train their agents, and by failing to act by administering any emergency seclusion and emergency physical restraint techniques as required by statute, Defendant breached its affirmative and statutory duty of care with actions and inactions so reckless that it demonstrated a substantial lack of concern for, and deliberate indifference to, whether a serious injury to Plaintiff-child Doe would result.

54.     Defendant's and its agents' gross, willful and wanton negligence caused the injuries to Plaintiff-child, including an acute left parietal subdural hematoma and other injuries that occurred prior to and on October 10, 2017.

55.     Plaintiff-child Doe has suffered, and will continue to suffer, great non-economic damages including pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, embarrassment, humiliation and/or mortification, due to the Defendant's grossly negligent actions.

56.     Plaintiff-child Doe has suffered, and will continue to suffer, economic damages including past and future medical expenses, loss of earning capacity and other economic losses.

57.     Defendant's failure to supervise and train its staff in planning and professional usage of restraint and Defendant's agents failure to form a restraint plan and to utilize professional and reasonable physical restraint to safeguard Plaintiff-child Doe while knowing that he was nearly

certainly going to suffer a serious life-threatening injury from his SIB was the proximate and most immediate cause of Plaintiff-child's injuries.

58.     Defendant School Board is liable for the gross negligence of its employees and agents in this circumstance under the principal of respondeat superior.

WHEREFORE, the Plaintiff-child, hereby demands a judgment in her favor in an amount in excess of twenty-five thousand ($25,000.00) dollars against Defendant MISD together with costs, interest and attorney fees.

## COUNT II—VIOLATION(S) OF 42 USC 1983 FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS

59.     Plaintiff-child hereby incorporates Paragraphs 1-58 as if fully set forth herein.

60.     This action arises under 42 U.S.C.S § 1983 and jurisdiction is conferred by 28 U.S.C.S § 1331, 1343(a)(3), (4).

61.     Defendant's agents, acting under color of state law, allowed Plaintiff-child Doe into the Keith Bovenschen School as a minor, who is disabled due to his Autism Spectrum Disorder, requires constant supervision, and is not free to leave the school without guidance and supervision.

62.     By allowing Plaintiff child Doe into the school, they established a special relationship with him, thereby securing his constitutionally protected rights.

63.     Defendant had a duty to adopt a seclusion and restraint policy by the 2017-2018 school year, train the necessary staff on said policy, and discharged that policy under the appropriate emergency situations. MCL 380.1307c(c), g.

64.     Defendant refused to follow the law and institute a restraint policy or train its staff, as mandated by Michigan law, on when and how to discharge restraint and seclusion techniques.

65. Defendant's agents Johanna Mexico, Julie Stuckey, and Catherine Sulkowski, acting at the direction and supervision of Defendant, violated their affirmative duty to protect Plaintiff's rights by their utter failure to discharge restraint techniques when an emergency situation arose when Plaintiff-child Doe was engaging in SIB on October 10, 2017.

66. That as a direct result of Defendant's agents refusing to discharge seclusion and restraint techniques to protect Plaintiff-child Doe, he sustained severe injuries, including a seizure and an acute left parietal subdural hematoma. It was the Defendant's agent's inadequate actions that deprived Plaintiff-child Doe of his constitutionally protected right to personal health, safety, protection, and fair and equal treatment and opportunity for education.

67. That because Defendant deprived Plaintiff-child Doe of his constitutionally protected rights, he was, and is now, unable to attend school in the same capacity as before because of his injuries and is thereby deprived of his constitutionally protected educational opportunity.

68. That Defendant's failure to immediately call the appropriate staff upon the onset of Plaintiff-child's emergency situation was a violation of MCL 380.1307c(d). This statutory violation resulted in Plaintiff-child's severe injuries, including an acute left parietal subdural hematoma.

69. Because of Defendant's agent's fifteen-minute delay to call the school nurse, and subsequently the EMT – which thereby violated MCL 380.1307c(d) -- Plaintiff-child Doe sustained severe injuries that could have been avoided and, therefore, Defendant deprived Plaintiff-child Doe of personal safety, right to medical care and protection, and fair and equal treatment, and thereby deprived him of his constitutionally protected rights.

70. Plaintiff-child Doe sustained major physical and emotional injuries, directly stemming from Defendant's affirmative decision to not *train* their agents on the use of protective

seclusion and restraint techniques – violating MCL 380.1307g – and, because of the breach of their statutory duty, Defendant's agents could not adequately discharge emergency restraint and seclusion techniques on Plaintiff-child Doe.

71.     Plaintiff-child Doe's injuries stemming from Defendant's refusal to train their staff deprived Plaintiff-child of his constitutionally protected right to fair and equal treatment because he was no longer able to use the school's educational resources as other similarly situated individuals because of his severe injuries.

72.     Defendant, acting under the color of state law, authorized, ratified, and permitted the creation of policy, which wholly excluded a plan for discharging protective restraint techniques – this established a de facto policy of deliberate indifference to Plaintiff-child Doe's constitutional right to safety and protection at the Keith Bovenschen School.

73.     Separately, if a government entity fails to train its agents it can be considered *government policy* and will support liability under 42 U.S.C.S § 1983.

74.     Defendant's agents were required under MCL 380.1307 to be *trained* by Defendant to discharge protective restraint techniques in instances of severe SIB, such as the SIB that Plaintiff-child Doe engaged in on October 10, 2017.

75.     Defendant made a willful decision to not train their agents to perform protective restraint techniques, despite being required to do so under to Michigan law.

76.     Because of Defendant's deliberate indifference in failing to train employees to perform protective restrain techniques, the training the agents received to care for and protect Plaintiff-child Doe was wholly inadequate for the tasks they were required to perform.

14

77. That the Defendant's inadequate training and supervision of Defendant's agents was the result of Defendant's deliberate indifference to the need of physical protection for Plaintiff-child Doe and other similarly situated individuals.

78. Defendant's failure to train their agents to discharge protective restraint techniques pursuant to Michigan law was the cause of Plaintiff-child Doe's aforementioned physical injuries, and the deprivation of his constitutional right to personal safety, medical care and protection, and fair and equal treatment.

WHEREFORE, the Plaintiff-child, hereby demands a judgment in her favor in an amount in excess of twenty-five thousand ($25,000.00) dollars against all Defendant together with costs, interest and attorney fees.

## COUNT III--VIOLATION OF THE PERSONS WITH DISABILITES CIVIL RIGHTS ACT

79. Plaintiff-child Doe incorporates by reference paragraphs 1-76.

80. Defendant oversaw the Keith Bovenschen School, which is an *educational institution,* as that term is defined in MCL 37.1401, and is located in Macomb County, Michigan.

81. Plaintiff-child is a person with a *disability* as that term is defined in the Persons with Disabilities Civil Rights Act (hereafter, PDCRA) because he has a determinable physical characteristic, Autism Spectrum Disorder, that substantially interferes with several of his life activities and is unrelated to his ability to use and benefit from the school's special educational activities, programs, and facilities at an educational institution.

82. At all times relevant hereto, Plaintiff-child Doe engaged in SIB, including, but not limited to, hitting himself with his fists in the head and neck, which on several occasions resulted

in physical injuries. Defendant's agents were aware of Plaintiff-child's self-injurious behavior and his injuries stemming from the SIB.

83.     Plaintiff-child Doe is qualified to be a student at the Keith Bovenschen School, which is operated by Defendant MISD, and his disability is unrelated to his ability to use and benefit from the school's resources.

84.     Pursuant to Michigan law, an educational institution is prohibited from, in part, "discriminating in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability...". MCL 37.1402(b)

85.     That on October 10, 2017, after several episodes of severe SIB at the Keith Bovenschen school, and in Defendant's agent's presence, Plaintiff-child Doe once again predictably engaged in SIB.

86.     That on October 10, 2017, the Plaintiff-child was struck with another severe episode of SIB involving repeatedly striking his head, face and neck and Defendant's staff and agents decided not to utilize any professional restraint techniques widely used in special education settings to keep children engaged in SIB safe and protected so they are not injured at school and can engage in the publicly available educational opportunities like all the other children.

87.     Defendant violated the PDCRA, and discriminated against Plaintiff-child Doe, when its agents refused to "call" appropriate personnel "immediately at the onset" of the "emergency situation", instead waiting ten minutes to contact anyone outside the classroom, then five *additional* minutes before calling the nurse. MCL 380.1307c(d).

88.     That on October 10, 2017, Plaintiff-child Doe suffered a seizure and an acute left parietal subdural hematoma directly stemming from Defendant's illegal inaction which violated the PDCRA.

89.     The failure of Defendant's agents to call appropriate staff, as they were legally required to do, resulted in Plaintiff-child's severe and lasting injuries that ultimately deprived him of school resources because he was no longer able to attend Defendant's school in the same capacity as he had previously and in the same capacity as other children in the community , thereby discriminatorily removing his equal education opportunity.

90.     Additionally, Plaintiff-child Doe was discriminated against because of his disability when he was denied equal access to Keith Bovenschen School's resources because of his brain injuries stemming directly from Defendant's refusal to discharge lawfully permitted and required protective restraint techniques, pursuant to MCL 380.1307, and when upon the onset of the emergency situation when Plaintiff-child Doe engaged in severe SIB, resulting in the severe injuries and damages stated above.

91.     Defendant violated the PDCRA when it discriminated against Plaintiff-child Doe by denying Plaintiff-child equal access to education because of Defendant's failure to protect Plaintiff-child Doe by using seclusion and restraint techniques, even though they were obligated to do so pursuant to Michigan law.

92.     Defendant has denied Plaintiff-child equal opportunity to school resources because it refused to adopt a policy of protection through the use of restraint techniques, thereby causing Plaintiff-child Doe to injure himself with SIB so severely that he is now unable to attend Keith Bovenschen School in the same capacity that he would have but for Defendant's violation of the PDCRA.

17

93.    Equally, Defendant's complete refusal to *train* the staff that had a statutory duty, and undertook an affirmative duty based on their previous attempts, to protect Plaintiff-child Doe, categorically amounted to a violation of MCL 380.1307g (v),(vii),(x) and (xi), and thereby a violation of the PDCRA.

94.    As a direct and proximate result of Defendant MISD's violation of the PDCRA, Plaintiff-child Doe has been damaged in an amount exceeding twenty-five thousand dollars ($25,000.00).

WHEREFORE, the Plaintiff-child, hereby demands a judgment in her favor for the benefit of the Plaintiff-child in an amount that this Court fairly determines and against Defendant MISD together with costs, interest and attorney fees.

Respectfully submitted,
CHRISTENSEN LAW

BY: _____
DAVID E. CHRISTENSEN (P45374)
SARAH S. STEMPKY KIME (P74167)
Attorneys for Plaintiff
25925 Telegraph Road, Suite 200
Southfield, MI  48033
(248) 213-4900/Fax (248) 213-4901
dchristensen@davidchristensenlaw.com
skime@davidchristensenlaw.com

Date: November 19, 2019

18

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB**

ALISA SHEFKE, as Next Friend of
JOHN DOE, a minor,

        Plaintiff,

vs.

MACOMB COUNTY INTERMEDIATE SCHOOL
DISTRICT BOARD OF EDUCATION

        Defendant.

_____/

2 0 1 9 - 0 0 4 7 3 2 - N Z

Case No.:  19-            -NZ
Hon.



DAVID E. CHRISTENSEN (P45374)
SARAH S. STEMPKY KIME (P74167)
CHRISTENSEN LAW
Attorneys for Plaintiff
25925 Telegraph Road, Suite 200
Southfield, MI  48033
(248) 213-4900/Fax (248) 213-4901
dchristensen@davidchristensenlaw.com
skime@davidchristensenlaw.com

_____/

**DEMAND FOR JURY TRIAL**

    NOW COMES the Plaintiff, ALISA SHEFKE as Next Friend of JOHN DOE, a minor, by

and through their attorneys, CHRISTENSEN LAW, and hereby demand a trial by jury in the

above-entitled matter.

                Respectfully submitted,
                CHRISTENSEN LAW

BY: _____
                DAVID E. CHRISTENSEN (P45374)
                SARAH S. STEMPKY KIME (P74167)
                Attorneys for Plaintiff
                25925 Telegraph Road, Suite 200
Date: November 19, 2019        Southfield, MI  48033