UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISA SHEFKE, as N/F of JOHN
DOE, a minor,

                    Plaintiff,

                                                    Case No.: 20-cv-10049
v.                                                  Hon. Gershwin A. Drain


MACOMB INTERMEDIATE
SCHOOL DISTRICT,

                    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#4] AND CANCELLING AUGUST 25, 2020 HEARING

## I.   INTRODUCTION

Plaintiff Alisa Shefke, as Next Friend of John Doe, her minor son, brings the instant action against Defendant Macomb Intermediate School District.  Plaintiff alleges the District's refusal to implement protective restraint techniques to ensure her son, a non-verbal fourth grader who suffers from Autism Spectrum Disorder and exhibits self-injurious behavior ("SIB"), was safe resulted in her son suffering a seizure and brain injury on October 10, 2017.

Plaintiff originally filed her gross negligence, 42 U.S.C. § 1983 Fourth and Fourteenth Amendment, and Michigan's Persons with Disabilities Civil Rights Act

("PWDCRA"), MICH. COMP. LAWS § 37.1401 *et seq.* claims in the Macomb County Circuit Court.  Defendant timely removed the action to this Court and now moves for dismissal arguing Plaintiff failed to exhaust her administrative remedies as required by the Individuals with Disabilities Education Act's ("IDEA") exhaustion requirement.  *See* 20 U.S.C. § 1415(1).

Plaintiff has filed a response in opposition arguing exhaustion of administrative remedies is futile because the District has now implemented the Emergency Intervention Plan allowing for the protective restraint techniques requested by Plaintiff.  Thus, Plaintiff argues there is no relief to be obtained through pursuit of an administrative remedy because Plaintiff only seeks to hold the school accountable through monetary damages, a remedy that is unavailable through the IDEA's administrative process.

Defendant filed a Reply brief arguing Plaintiff's request for monetary relief does not excuse exhaustion.  Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Accordingly, the Court will cancel the hearing set for August 25, 2020, and will decide Defendant's motion on the briefs.  *See* E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court will grant the Defendant's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

Plaintiff suffers from Autism Spectrum Disorder.  ECF No. 1, PageID.9, ¶4.
As a result of his disorder, he exhibits episodes of SIB.  *Id*.  SIB can include head
banging, hand or arm biting, teeth, and fingernail pulling, eye gouging or poking,
face or head punching, skin picking, scratching, or pinching, forceful head shaking
or slamming and dislocation of joints.  *Id.,* ¶5.

During the 2017/2018 academic year, Plaintiff's son attended Keith
Bovenschen School and was assigned a team of staff members to employ de-
escalation techniques on him when he was overtaken by SIB.  *Id*., PageID.9-10, ¶7.
Defendant was aware of Plaintiff's son's SIB because episodes had occurred
during school and discussions were had about them between employees of
Defendant and Plaintiff.  *Id*., PageID.10-13, ¶¶ 8-12, 14-16, 18, 24-25.  Plaintiff's
son had been injured on more than one occasion due to his SIB while at school.
*Id*., PageID.10-13, ¶¶ 9, 11, 18, 24-25.  On October 4, 2017, it was noted that
Plaintiff's son's SIB had increased to 15 times per week.  *Id*., PageID.11, ¶18.

During September and October of 2017, Plaintiff repeatedly asked that the
District implement a plan to use seclusion and restraint techniques to keep
Plaintiff's son safe.  *Id.,* PageID.11-12, ¶ 19.  However, the District wholly refused
and failed to create an Emergency Intervention Plan.  *Id*., PageID.12, ¶¶ 20-21.

On October 10, 2017, Plaintiff's son suffered another episode of SIB where he beat himself in the head for over twenty minutes. *Id*., PageID.13, ¶ 26. The school's staff moved Plaintiff's son to a mat but did nothing else other than watch him as he beat himself so severely, he suffered a seizure, was taken to the hospital and diagnosed with a brain injury. *Id*., PageID.13-14, ¶¶ 28, 35. In 2018, the District adopted a plan that included the use of restraint in situations such as the one that occurred on October 10, 2017. *Id*., PageID.15, ¶ 41.

## III.   LAW & ANALYSIS

### A. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of*

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

### B. **Exhaustion of Administrative Remedies**

The IDEA ensures "'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical and intellectual

disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 748 (2017) (citing 20

U.S.C. § 1412(a)(1)(A)). A FAPE consists of "'special education and related

services'—both 'instruction' tailored to meet a child's 'unique needs' and

sufficient 'supportive services' to permit the child to benefit from that instruction."

*Id*. at 748-49 (quoting § 1401(3)(A)(i), (26), (29)).

An "individualized educational program" or IEP is the "primary vehicle for

providing each child with the promised FAPE." *Id*. (citations omitted). The IEP

"spells out the personalized plan to meet all of the child's educational needs, . . .

documents the child's current levels of academic achievement, specifies

measurable goals . . . and lists the special education and related services to be

provided[.]" *Id*. at 749.

The IDEA establishes a procedure for resolving disputes between parents

and school administrators who do not always agree on IEP issues. *Id*. A parent can

file a formal complaint concerning any provision of the FAPE with the local or

state educational agency or request mediation, as well as have a due process

hearing. *Id*. If a parent is dissatisfied with the outcome of the administrative

process, she may seek judicial review by filing an action in state or federal court.

*Id*.

In addition to the requirement that IDEA claims be exhausted under §

1415(l), claims brought under the Constitution, the Americans with Disabilities

Act, the Rehabilitation Act, or similar federal laws that protect the interests of children with disabilities and which "seek[] relief that is also available under the IDEA" must likewise be exhausted under the IDEA's administrative procedures. *Fry*, 137 S. Ct. at 749.

Here, Plaintiff's claims arise from the District's purported failure to implement an IEP that authorized the use of restraint techniques before the October 10, 2017 incident. Multiple courts have found that a complaint regarding the use of restraints on a student seeks relief from the denial of a FAPE and requires administrative exhaustion. *See J.L. by and through Leduc v. Wyoming Valley W. Sch. Dist*., 722 F. App'x 190, 192-93 (3d Cir. 2018) (holding that use of restraints on a special needs student during transport to school would not have occurred outside the school setting, thus under *Fry*, the plaintiff's complaint was subject to the IDEA's exhaustion requirement); *J.M. v. Francis Howell Sch. Dist*., 850 F.3d 944, 949-50 (8th Cir. 2017)(applying *Fry* and holding that allegations concerning use of mechanical restraints in the school setting go to "support services" under the IDEA and requiring administrative exhaustion under the IDEA); *P.G. v. Rutherford Cty. Bd. of Ed*. , 313 F. Supp.3d 891, 900-01 (M.D. Tenn. 2018) (holding the plaintiff's allegations concerning the defendant's failure to properly train instructors on how to handle challenging students with behavioral problems were subject to exhaustion under the IDEA).

Similar to these decisions, Plaintiff's allegations are based on her son's disabilities in the school context and her disagreement with the District concerning his IEP.  Plaintiff does not dispute that her § 1983, non-IDEA claim is subject to the exhaustion requirement set forth in 20 U.S.C. § 1415(l).  However, she argues exhaustion is futile because she seeks monetary damages, which are not available through the IDEA's administrative exhaustion procedure.

The *Fry* court "le[ft] for another day a further question" concerning exhaustion under §1415(l), specifically, whether "exhaustion is required when the plaintiff complains of the denial of a FAPE, but that specific remedy she requests— money damages[]—is not one that an IDEA hearing officer may award."  *Fry*, 137 S. Ct. at 752 n.4.  Another district court in this Circuit has held that "[i]n the absence of Supreme Court edict, Sixth Circuit precedent requires that the plaintiffs exhaust their administrative remedies and build a record even if the plaintiffs seek certain relief, like money damages, that is unavailable in an IDEA administrative proceeding."  *P.G.*, 313 F. Supp.3d at 905 (citing *F.H. v. Memphis City. Sch.*, 764 F.3d 638, 645 (6th Cir. 2014)) ("Appellants are not excused from exhaustion merely because they request compensatory damages" from an IDEA hearing officer who has no authority to make such an award); *see also Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000) ("[W]e agree with those

courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary.")

In *Covington*, the Sixth Circuit held that exhaustion of administrative remedies would be futile because of the plaintiff's unique circumstances, including that the plaintiff had already graduated from special education school. *Id*. at 916. The *Covington* plaintiff's graduation from, and lack of need for special education services is not present in this case. Plaintiff remains a student in the District, thus *Covington* is distinguishable from the circumstances present here.

Plaintiff's reliance on *F.H. v. Memphis City Schools* is also misplaced because the facts in F.H. are distinguishable from the circumstances here. 764 F.3d 638, 645 (6th Cir. 2014). The *F.H.* court did not require exhaustion of the plaintiff's § 1983 claim because it was based upon the plaintiff's allegations of verbal, physical, and sexual abuse, which were non-educational in nature and could not be remedied through the IDEA's administrative exhaustion process. *F.H.*, 764 F.3d at 644. Additionally, like the facts in *Covington*, F.H. had already graduated, thus "[t]he administrative process would not provide either the type of relief he seeks or any other type of remedy to redress wholly retrospective injuries." *Id.* at 644. Here, Plaintiff's son is still a student in the District and his § 1983 claim is directly related to deficiencies with respect to implementing restraint techniques in her son's IEP.

The Court has found a recent decision from another district court in this Circuit which appears to support the Plaintiff's futility argument. *See Brooklyn T. v. Knox Cty.*, No. 3:20-CV-0005, 2020 U.S. Dist. LEXIS 111961 (M.D. Tenn. Jun. 25, 2020). In *Brooklyn T*., the minor child had a number of disabilities and had used an assistive communication device throughout her education until her school changed the device to a less effective device, which caused the student to engage in SIB leading to the detachment of her retina and complete blindness in her right eye. *Id.* at *1-2. The child's parents brought suit alleging the defendants did not undertake a functional behavioral assessment nor create a behavioral intervention plan. *Id*. at *4. The complaint sought money damages for the *Brooklyn* plaintiff's blindness but did not request any relief in the form of educational programming changes because in the spring of ninth grade, the defendants began using the original assistive communication device and put in place a Behavioral Intervention Plan. *Id*. at *5. The plaintiffs alleged that "these changes ended [their daughter]'s self-injurious behavior." *Id*.

The *Brooklyn* court concluded the plaintiffs' ADA and Rehabilitation Act claims were subject to the IDEA's exhaustion requirement even though the "[p]laintiffs' complaint asks only for damages related to Brooklyn's personal injuries, their claim is inextricably tied with the denial of a FAPE and thus the IDEA's exhaustion requirement applies to this lawsuit." *Id*. at *11. However, the

*Brooklyn* court went on to find exhaustion was futile because "Brooklyn's grievances related to her current IEP have already been fully remedied[,]" where the defendants resumed using the original assistive communication device and put in place a Behavioral Intervention Plan.  *Id.*  Thus, the only remaining issue was compensation for the *Brooklyn* plaintiff's past injuries and disfigurement.  *Id*.

*Brooklyn* would appear to be on point with the circumstances present here. Plaintiff has alleged the District implemented an Emergency Intervention Plan that includes the use of restraint techniques during Plaintiff's son's SIB episodes. Additionally, Plaintiff's Complaint only seeks damages and does not seek any relief with respect to her son's educational programming.  However, the *Brooklyn* case is not controlling upon this Court.

Because the IDEA's ability to remedy Plaintiff's injuries is unclear, the Court finds the "issues raised by this litigation are best first addressed by the comprehensive administrative process Congress put in place for resolution of differences in the educational setting."  *S.E. v. Grant County Bd. of Educ*., 544 F.3d  633, 643 (6th Cir. 2008).   One of the reasons the Sixth Circuit has concluded a claim for money damages alone will not excuse a plaintiff's failure to exhaust administrative remedies under § 1415(l) is "that the administrative process might ultimately afford sufficient relief to the injured party, even if it is not the specific relief that the plaintiff requested."  *Covington*, 205 F.3d at 916-17.  A developed

record will assist the Court in properly determining Plaintiff's § 1983 claim. *S.E.*, 544 F.3d at 643.

Additionally, the Court will decline to exercise supplemental jurisdiction over Plaintiff's gross negligence and PWDCRA claims. The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity. *Carlsbad Tech., Inc., v. HIF Bio., Inc*., 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed. Express Corp*., 89 F.3d 1244, 1254 (6th Cir. 1996). Generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical*, 89 F.3d at 124-55; *see also Bodenner v. Graves*, 828 F.Supp. 516, 518 (W.D. Mich. 1993)("[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues substantially predominate over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought.") (internal quotation marks and citation omitted). Here, Plaintiff's state law claims will either require elements of proof distinct from his § 1983 claim, or they will cause a substantial expansion of the suit beyond that necessary and relevant to her federal claims.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion to

Dismiss [#4] is GRANTED.

Count II is DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.

Counts I and III are DISMISSED WITHOUT PREJUDICE pursuant to 28

U.S.C. § 1367(c)(2) and (c)(3).

SO ORDERED.

Dated:  August 19, 2020                                    /s/Gershwin A. Drain
                                                           GERSHWIN A. DRAIN
                                                           United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 19, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager