UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISA SHEFKE, as Next Friend of
JOHN DOE, a minor,

Plaintiff,

Case No.: 2:20-cv-10049
v.                                                Hon. Gershwin A. Drain

MACOMB INTERMEDIATE
SCHOOL DISTRICT, *et al*.,

Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#67] AND
SETTING NEW DATES**

## I.     INTRODUCTION

Plaintiff, Alisa Shefke, is the mother of minor Plaintiff John Doe who is a

student at Keith Bovenschen School, one of Defendant Macomb Intermediate

School District's (MISD) schools.  After John Doe suffered a traumatic brain

injury while at the school on October 10, 2017, Plaintiff filed the instant lawsuit

against MISD and several employees at Keith Bovenschen school:  Julie Stuckey,

John Doe's special education teacher, Johanna Mexico, a school psychologist,

Cathy Sulkowski, the school principal, Patricia Bruss, the school nurse, and

Tammy Tanghe, a paraprofessional who worked in Stuckey's classroom.  Plaintiff brings Fourth[1] and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983, as well as state law claims of gross negligence and violation of the Persons With Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1101 *et seq*.

Presently before the Court is the Defendants' Motion for Summary Judgment, filed on July 11, 2024.  Plaintiff filed a Response on August 22, 2024. Defendants filed a Reply in support of their present motion on September 5, 2024. A hearing on this matter was held on November 19, 2024.  For the reasons that follow, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

John Doe was diagnosed with autism spectrum disorder (ASD) when he was two years old.  ECF No. 82, PageID.2505-2506.  He is nonverbal. *Id*., PageID.2505.  John Doe began attending Bovenschen School when he was four years old.  *Id*., PageID.2505-2506.  Bovenschen School is a center-based (100% special education) school for children with cognitive impairments. ECF No. 67,

---

[1] Plaintiff does not address her Fourth Amendment claim in her Response to the Motion for Summary Judgment. As such, the Court grants summary judgment to the Defendants on this claim.  *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff 'fails to address [a claim] in response to a motion for summary judgment,' the claim is deemed waived.")(citation omitted).

PageID.1543.  A symptom of John Doe's ASD is self-injurious behavior (SIB),

which the Plaintiff began noticing in 2014.  ECF No. 82, PageID.2507.

From 2016 through 2017, John Doe's aggression and SIB became

increasingly concerning to his mother.  *Id.,* PageID.2509.  She reached out to the

school to set up a behavior meeting.  *Id.*  John Doe's first Positive Behavioral

Support Plan (PBSP) meeting took place on May 1, 2017.  *Id.*, PageID.2541.  John

Doe's parents, Defendants Julie Stuckey, Johanna Mexico and two other non-

parties attended the meeting.  *Id.*, PageID.2542.

The PBSP, dated May 1, 2017, noted that John Doe experienced SIB thirteen

(13) times per week and included banging head, i.e. making physical contact with

his head forcibly against another object/surface to the extent that requires staff to

direct John Doe to stop to prevent injury.  *Id.*  The PBSP indicated that teaching

staff would make John Doe take a break on the mat when he engages in SIB and

once he is calm, he will be directed to return to the activity he left.  *Id.*  It further

stated that staff will monitor John Doe closely during this time. *Id.*  If safety is in

question, staff will call for support from the medical and/or behavioral team.  *Id.*,

PageID.2542. John Doe's parents agreed to the plan and signed it, along with

Defendants Stuckey and Mexico.  *Id.*

When the PBSP was reviewed in August of 2017, it was documented that

John Doe's SIB had become more intensive.  *Id.*, PageID.2546.  His mother

reported that he was more out of control during these episodes, that he was hitting and kneeing himself in the face and punching himself in the head causing his mother to use physical restraint to prevent injury. *Id*. However, physical restraint did not always prevent injury as in September of 2017, his mother informed his teacher that John Doe had recently been diagnosed with a deviated septum, which was causing John Doe some discomfort. *Id*., PageID.2604. She stated that the doctor would not operate. *Id*. She asked his teacher if she noticed whether his SIB behaviors had become more aggressive or more frequent. *Id*. Defendant Stuckey responded that John Doe's behaviors were up and down, with some days worse and others better. *Id.*

On September 25, 2017, John Doe had another SIB and a Report of Student Accident was prepared by Defendant Bruss, the school Nurse. *Id*., PageID.2606. She described the incident: "While having an SIB student's lip got cut open by a chipped tooth." *Id*. In her handwritten notes of the incident, Nurse Bruss noted, "Major SIB–beating head and face with open hand and fist." *Id*., PageID.2608.

Two days later, John Doe had another SIB where he was hitting his head and his forehead began to bleed. *Id*., PageID.2610. Later that evening, Mrs. Shefke emailed Defendant Mexico, the school Psychologist, stating that John Doe's SIB has increased to a point that he is injuring himself. *Id*., PageID.2612. She also noted that SIB triggered by pain was causing increased aggression and she inquired

how to keep him safe during these episodes and whether there was anyone trained and able to restrain him in these extreme cases. *Id*.  She further requested that his PBSP meeting be moved to an earlier date. *Id*.  Defendant Mexico responded that they were meeting on October 4, 2017. *Id*.  Mrs. Shefke also reached out to Defendant Sulkowski, the school Principal, about the use of physical restraint and Ms. Sulkowski informed her that the school staff would not use restraint. *Id*., PageID.2561.  The next day, Mrs. Shefke emailed John Doe's teacher again inquiring how she felt about restraining John Doe in extreme cases of SIB. *Id*., PageID.2614.

In response, Defendant Stuckey forwarded Mrs. Shefke's email to Defendant Sulkowski, noting that "this is the third email." *Id*., PageID.2616.  Sulkowski replied to Stuckey, copying Defendants Mexico and Bruss and others noting that "[w]e need to be unified in our responses to [John Doe's] parents as related to his pain/behavior." *Id*.  On September 29, 2017, Mrs. Shefke again contacted Defendant Stuckey asking to speak about John Doe's increased aggression and whether "there is some kind of plan to keep him safe in his most extreme episodes." *Id*., PageID.2618.

On October 4, 2017, Mrs. Shefke met with MISD staff to discuss John Doe's PBSP and her concerns about his "intensified, aggressive SIB . . . ." *Id*., PageID.2555.  At the meeting, Mrs. Shefke wanted to discuss use of physical

restraint, but she felt as if the staff in attendance did not want to talk about it and kept returning to the topic of de-escalation and blocking. *Id*. Mrs. Shefke recalls that she informed them that blocking would only escalate John Doe and his teacher, Defendant Stuckey, agreed. *Id*. Mrs. Shefke asked that the staff use a two-person seated restraint procedure as outlined in the Nonviolent Crisis Intervention (NVCI) program, but they refused. *Id*., PageID.2577. In fact, Defendant Sulkowski mandated that her staff refrain from using any restraint techniques, stating that "we cannot and will not use a hold with him at school." *Id*., PageID.2625. It was not until John Doe's April 17, 2018 PBSP that the staff incorporated the two-person seated restraint method as part of his PBSP—a procedure that was part of John Doe's plan through 2022. *Id.*, PageID.2622.

Following the October 4, 2017 meeting, an updated PBSP was implemented for John Doe, and the updated plan included:

> Follow PBSP, Call admin/psych/nurse after 10 minutes of SIB or immediately if the behavior warrants, team uses CBI transport to sensory room, use of helmet (upon receipt from mom), use of pillow to block hits to head. Team to develop Emergency Intervention Plan (EIP).

*Id*., PageID.2701. Plaintiff was scheduled to meet with the school's Occupational Therapist for a helmet fitting on October 10, 2017.

On October 9, 2017, John Doe had another SIB, where he was "hitting his hand to his head and hit his knee to his head . . [he] also attempted to hit his head

against wall and floor, punching his head/nose, smacking the side of his head." *Id*., PageID.2703.  After 12 minutes, John Doe gave himself a bloody nose. *Id*.  The staff used de-escalation tactics and "blocking [him] from continuous impulsive behaviors . . . ." *Id*.  Defendant Stuckey was involved in this incident and acknowledged that blocking "was a trigger" for John Doe "so that would have been something in the back of our minds and taken into consideration depending on the situation at hand." *Id*., PageID.2726.

On October 10, 2017, John Doe began engaging in SIB at 9:35 a.m., and "in addition to his typical head banging and punching himself in the head/face, [his] behavior including punching himself in the back of the neck." *Id*., PageID.2977. Defendant Tanghe, the classroom Paraprofessional, was in the classroom during the incident; however she did not assist with John Doe's care. *Id*., PageID.2879. Defendant Stuckey was also in the classroom during this incident.  She directed John Doe to the mat in the classroom and he laid down while continuing to engage in SIB. *Id*., PageID.2728.

At 9:45 a.m., Stuckey called for assistance, and Defendant Mexico arrived. *Id*., PageID.2977.  When she arrived, John Doe was still engaging in SIB and hitting his head backward against the mat. *Id*., PageID.2735.  At 9:50 a.m., John Doe's arms went rigid and after twenty to thirty seconds, his arms clenched, and his eyes rolled back. *Id*.  During this time, Stuckey and Mexico used the same

interventions that had previously been used on John Doe, including the triggering blocking.  *Id.*, PageID.2685.  When asked at her deposition if there was anything preventing her from using the two-person seated restraint, Defendant Stuckey responded, "I don't know."  *Id.*, PageID.2686.  She indicated that she did not consider using a hold during the incident and used other means to de-escalate John Doe.  *Id.*, PageID.2689.

When John Doe's eyes rolled back, Stuckey and Mexico believed he was having a seizure.  *Id.*, PageID.2956.  Within 20 to 30 seconds, John Doe began vomiting and they called for the nurse.  *Id.*  John Doe urinated through two pull ups after the seizure activity occurred.  *Id.*  When he stopped vomiting, he was responsive but "flushed and very sweaty."  *Id.*, PageID.2655.  Mexico admitted no restraint was used during this episode, and when deposed she admitted they could have used a "two-person seated hold . . . if it were necessary." *Id.*, PageID.2896.

John Doe was taken by ambulance from the school to Children's Hospital. Imaging of his brain that same day revealed a "[n]ew acute bilateral frontoparietal non compressive subdural hematoma." *Id.*, PageID.2985.   He was discharged from the hospital on October 24, 2017, with diagnoses of "[n]ew onset seizure," and "traumatic subdural hematoma . . . ." *Id.*  Dr. Brian Woodruff, a Board-Certified Pediatric Neurologist, reviewed John Doe's medical records from the October 10, 2017 hospital stay, and opined that "the trauma to John Doe's head and brain while

staff allowed him to engage in unprotected self-injurious behavior at Bovenschen Elementary on October 10, 2017 was the proximate cause of John Doe suffering a trauma-induced seizure and traumatic brain injury." *Id*., PageID.3053.

Prior to the 2017 school year and the SIB episode resulting in John Doe's traumatic brain injury and seizure, the State of Michigan passed a new seclusion/restraint law that allowed for emergency restraint. ECF No. 67, PageID.1682. Consistent with the law, MISD implemented a student seclusion and restraint policy on August 9, 2017, which allowed for the use of emergency restraint. *Id.,* PageID.1668-1679. MISD staff underwent training on that law and MISD's seclusion and restraint policy on August 21, 2017. *Id*., PageID.1682. Staff also took a Crisis Prevention Institute (CPI) course on NVCI on August 28, 2017. MISD had three Bovenschen staff members certified as CPI trainers who then administered the training to the rest of the staff. ECF No 67, PageID.1748. Defendant Sulkowski admitted at her deposition that MISD's policies on seclusion and restraint were "to follow the CPI model . . . which discussed . . . the type of things you can and cannot do." *Id*., PageID.1727.

Defendant Mexico kept a workbook from the August 2017 CPI training. ECF No. 67-25. Each Defendant admitted to completing the same workbook. *Id.,* PageID.2682. Defendant Stuckey recalls that she was trained on both a two-person seated restraint technique and a standing hold during the CPI training. *Id*. In fact,

all staff tasked with responding to John Doe's SIB were trained on these holds.  *Id.* Defendant Stuckey conceded at her deposition that if a student is on his back, staff can still use holds.  *Id.*, PageID.2682.  Defendant Mexico also admitted that if a student is lying down and beating himself, CPI policy permitted staff to use holding skills and a two-person seated hold.  *Id.*, PageID.2899.

Defendant Sulkowski, as principal, was tasked with ensuring that all staff adhered to their CPI training.  *Id.*, PageID.2854.  She admitted that the CPI facilitator guide states that disengagement applies when a student is harming staff or others, but it says nothing about disengagement when a student is harming himself.  *Id.*, PageID.2858.  She could not explain where she learned that staff could use blocking to prevent a student from harming himself. *Id.*, PageID.2859.

## III.   LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material

fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## B.  Fourteenth Amendment Substantive Due Process

The individual Defendants argue that they are entitled to qualified immunity because Plaintiff cannot establish a substantive due process violation when the Defendants had no constitutional duty to protect John Doe from himself and neither exception to this rule–the state-created danger exception or the special relationship exception[2]–apply.  Defendants further assert that Defendants' actions were not "conscious shocking."

Under 42 U.S.C. § 1983, Plaintiff must establish facts that show the deprivation of a constitutional right caused by someone acting under color of state law.  *McQueen v. Beecher*, 433 F.3d 460, 463 (6th Cir. 2006). The Due Process

---

[2] Plaintiff does not address the special relationship exception in her response brief. This is likely due to the fact that it is well settled in the Sixth Circuit that the special relationship exception does not apply in the public-school context.  *See Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995); *see also McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 n.4 (6th Cir. 2006) ("there is no 'special relationship' between a school and its students that gives rise to a constitutional duty.")(citations omitted).

Clause of the Fourteenth Amendment protects individuals from state actions that deprive the individual "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  "It is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury."  *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)(quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).  Generally, "a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, there are exceptions to this rule, including the state-created danger exception which occurs when the state creates or increases the harm to a person and causes injury.  *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 853 (6th Cir. 2016).  Substantive due process protects individuals from "government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). It "protects the right to be free from 'arbitrary and capricious' governmental actions . . . ." *Id.*(citing *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)).

In order to succeed on a claim under the "state-created danger" exception, Plaintiff must show: (1) an affirmative act by the state which created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff

specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006).

### 1) Affirmative Acts

Defendants argue Plaintiff cannot establish the first element of the exception because Plaintiff does not claim the individual Defendants took any affirmative action that substantially increased the danger to John Doe. Contrary to Defendants' argument, the individual Defendants did take affirmative action, namely Defendants Stuckey and Mexico took the affirmative action of blocking when John Doe engaged in SIB on October 10, 2017. Defendants are incorrect in asserting that Plaintiff's claim is "premised only on omissions and on John Doe's own acts of self-harm . . . ." ECF No. 83, PageID.3073.

Defendants' argument that the Sixth Circuit treats private acts of violence waged by the victim against himself differently than cases where the private act of violence is done by a third party is not well-taken. The cases cited by Defendants are distinguishable from the facts present here. In *Jones*, the plaintiff was a spectator at an illegal drag race wherein a driver lost control of his car and veered into the crowd, striking the plaintiff who later died from her injuries. *Id.* at 689. The plaintiff's estate brought suit against several officers, who were on the scene prior to the start of the drag race and failed to intervene and stop it. *Id*. In rejecting

the plaintiff's Fourteenth Amendment due process claim based on the state-created danger exception, the Sixth Circuit relied on the fact that the officers did not take any affirmative acts against the victim, they did not take the victim into custody, and did not place her in any greater danger than the rest of the spectators. *Id*. at 694.

The *Jones* court further noted that there was no evidence "as to why she could not have looked after herself in choosing whether to be a spectator at a dangerous event." *Id.* The court noted in circumstances where "a victim bears some responsibility for the risks she has incurred; it is even more difficult to say that the 'state' has 'created' the danger to her by its affirmative acts." *Id*. In so concluding, the *Jones* court distinguished the plaintiff's circumstances from cases where victims have "disability restrictions in their ability to care for themselves." *Id*. This is unlike the circumstances present here where John Doe's disability placed restrictions on his ability to care for himself, as well as where the state actors took the affirmative act of blocking John Doe during his SIB episode.

Nor does *Cutlip v. City of Toledo*, 488 F. App'x 107, 115-16 (6th Cir. 2012), persuade the Court that the individual Defendants did not take affirmative acts that increased the danger to John Doe. *Cutlip* involved a suicide, and the Sixth Circuit declined to extend the state-created danger exception to suicide because "[a]s a general principle, people cannot violate their own constitutional rights, and where a

person makes *a free and affirmative choice* to end his life, the responsibility for his actions remain with him."  *Id.* at 116 (emphasis supplied); *see also Jahn v. Farnsworth*, 617 F. App'x 453, 464 (6th Cir. 2015) (declining to impose state-created danger exception where the plaintiff-student committed suicide while under parental supervision and distinguishing from instances where a school drops a mentally unstable student at home with no supervision).

It is disingenuous for the individual Defendants to assert that John Doe's traumatic brain injury was caused solely by his disability and to argue that these circumstances are similar to situations where an individual makes "a free and affirmative choice to end his life."  *Cutlip*, 488 F. App'x at 116.  Here, John Doe did not, on his own volition, decide to beat his own brain with his fists, knees, floor and wall.  Nor did he choose to escalate this behavior, rather the record suggests Stuckey's and Mexico's decision to use the non-CPI approved blocking during his SIB, when they knew blocking triggered him, caused his escalation leading to his severe injuries.  Defendants' argument that this case is similar to suicide cases is rejected.

The individual Defendants argue that blocking adhered to the CPI methods, that they all agree they were required to follow. However, there is no evidence that blocking is an acceptable CPI method for the scenario presented on October 10, 2017.  This is not a self-injury case where the Defendants were unaware of the risk

of injury to John Doe.  At the October 4, 2017, PBSP meeting, Plaintiff informed all attendees that blocking would only trigger John Doe and make the SIB worse. Stuckey agreed with this at the meeting and concedes that prior to the October 10, 2017 SIB, she knew blocking was a trigger and kept this information in the back of her mind during his SIB episodes.

### 2) Special Danger

As to the second element of the state-created danger exception, Defendants also assert that Plaintiff only relies on her unsupported conclusory assertion that blocking escalated John Doe's SIB on October 10, 2017.  Defendants' argument would have this Court accept their version of John Doe's SIB episode on October 10, 2017, rather than view the record facts in the light most favorable to the non-moving party.  Contrary to Defendants' assertion, there is record evidence that Stuckey's and Mexico's acts of blocking increased the harm to John Doe during his SIB episode on October 10, 2017.

Dr. Michael Salitore, a Psychologist with expertise in special education and crisis intervention, has opined that the staff at Bovenschen "caused [John Doe] to suffer severe harm that he would not have otherwise suffered" by "using techniques such as blocking that were known to escalate the behavior . . . ."  ECF No. 82, PageID.3016.  Similarly, Brian Wolf, M.Ed., with specialty in Risk Management and conducting NVCI training for Oregon school districts, has opined

that "the staff's physical interventions were largely limited, by their own

admission, to the "blocking" maneuver[,] which was a "blatant disregard of a

known [John Doe] trigger" and "runs afoul of CPI doctrine, but also may well have

increased the likelihood and severity of [John Doe's] SIB, thus tragically

prompting his resultant serious injuries." *Id*., PageID.3044.  Based on the record

before the Court, the Defendants erroneously argue that the state action in this case

"merely return[ed] [John Doe] to a situation of preexisting danger since [John Doe]

[wa]s no safer before than after the state action."  ECF No. 83, PageID.3074.

Plaintiff has come forward with sufficient evidence for the trier of fact to conclude

Defendants' acts of blocking created a special danger to plaintiff and put him

specifically at risk.

### 3) Culpability

As to the third element of the state-created danger exception, Defendants

argue that Plaintiff invokes the incorrect deliberate indifference standard and

cannot establish the interventions used on October 10, 2017 shock the conscience.

The Supreme Court has explained that whether governmental conduct shocks the

conscience depends on the factual circumstances of the case.  *Cnty. of Sacramento*

*v. Lewis*, 523 U.S. 833, 846, 851-53. (1998).  In particular, where state actors

> are afforded a reasonable opportunity to deliberate various alternatives
> prior to electing a court of action . . . , their actions will be deemed
> conscious shocking if they were taken with "deliberate indifference"
> towards the plaintiff's federally protected rights.  In contradistinction,

> in a rapidly evolving, fluid, and dangerous predicament which
> precludes the luxury of calm and reflective pre-response deliberation .
> . . public servants' reflexive actions "shock the conscience" only if
> they involved force employed "maliciously and sadistically for the
> very purpose of causing harm" rather than "in a good faith effort to
> maintain or restore discipline."

*Claybrook v. Birchell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S.

at 852-53); *see also McQueen*, 433 F.3d at 469.  Defendants' argument that

Plaintiff must show they intended to cause harm is erroneous because "an actual

intent to injure is required when public actors must make hasty decisions[,] "[b]ut

when the official has time for reflection, deliberate indifference requires that he

must be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference."  *M.J. v. Akron

City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 450 (6th Cir. 2021).

Under the circumstances of this case, the correct standard to analyze whether

the individual Defendants' conduct is conscious shocking is the deliberate

indifference standard. *See Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014);

*Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp.3d 714 (S.D. Ohio 2018);

*McQueen*, 433 F.3d at 469.  Defendants Stuckey, Mexico and Sulkowksi had time

to deliberate and determine the appropriate CPI tools to use during John Doe's SIB

episodes.

Defendants' reliance on *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 679

(6th Cir. 2016) and its progeny to assert that the correct analytical framework

comes from use of force cases is misplaced. *Gohl* and its progeny involve physical abuse to students by staff members and rely on an excessive force framework. *Id.* (rejecting a special education teacher's use of force as conscience shocking under the Fourteenth Amendment); *Wadley v. Hazel Park Cmty. Schs.*, No. 18-cv-12063, 2019 U.S. Dist. LEXIS 210377 (rejecting Fourteenth Amendment claim based on shocks the conscience standard involving the use of force by slamming a door on a student causing significant injury to the student's fingers). The *Gohl elements* demonstrate why they are inapplicable to the circumstances here—the first three factors use the term "force"—and Defendants conveniently substitute "intervention" for "force" to disguise the *Gohl* factors inapplicability to the facts in this case. *See Gohl*, 836 F.3d at 678-79.

To establish the Defendants acted with conscious shocking deliberate indifference, the Plaintiff must show subjective recklessness. *McQueen*, 433 F.3d at 468. Subjective recklessness can be demonstrated "circumstantially by evidence showing that the risk is so obvious that the official had to have known about it. *Id.* The three factors to consider to determine whether deliberately indifferent conduct shocks the conscience include: "1) the voluntariness of the plaintiff's relationship with the government, 2) whether there was time for the government actor to deliberate, and 3) whether the government actor was pursuing a legitimate governmental purpose." *Range*, 753 F.3d at 590.

As to the first element, while John Doe's relationship with the district and individual Defendants was not a "special relationship," it "was not voluntary as attendance at school was mandatory" under Michigan law. *Meyers*, 343 F. Supp.3d at 726.

Next, the Court has already determined that the individual Defendants Stuckey, Mexico and Sulkowski had ample time for deliberation. They were put on notice on October 4, 2017, six days before the incident at issue herein, that John Doe's SIB was increasingly more violent and severe. They were further put on notice during this meeting that using the de-escalation method of blocking would only trigger him more exposing him to greater risk of injury. Moreover, the entire staff at Bovenschen were given the necessary tools to keep John Doe safe by using restraint techniques during their CPI training on August 28, 2017. When Stuckey was asked during her deposition if anything on October 10, 2017 prevented her from using the two-person seated restraint she had been trained on, she answered, "I don't know."

Despite this significant notice, Stuckey, and later Mexico, allowed John Doe to beat himself for fifteen minutes until he suffered a traumatic brain injury and seizure. The Defendants performed no risk assessment during the October 10, 2017 incident; they were committed to never using restraint techniques no matter what the circumstances called for. Thus, their claims that they could not use

restraint because John Doe was laying down on the mat and they were afraid he could not breathe if restraint was used, is not well taken.  Again, the record shows that Sulkowski was adamant that restraint was not to be used under any circumstances and Stuckey and Mexico followed her directive without considering the actual circumstances they were faced with on October 10, 2017.  Their after-the-fact rationale for not using restraint cannot be relied upon to find in their favor. Particularly when their training taught them that restraint was precluded when the student was in a face down position, and John Doe was not in this position on October 10, 2017.  *See* ECF No. 67, PageID.1684 (CPI training power point used during the August 28, 2017 training, which included "[i]nstruction on the state board policy of emergency seclusion and emergency physical restraint and *instruction in the use of emergency physical restraint and emergency seclusion*.")(emphasis supplied).

As to the last element of the deliberately indifferent shocks the conscience standard, Defendants maintain that their interventions on October 10, 2017 served a legitimate pedagogical purpose because they complied with John Doe's PBSP. Plaintiff argues that there was no legitimate governmental purpose in the Defendants' intervention of blocking, which violated their CPI training and that they knew would make the situation worse.  Their use of blocking did not work the day before the October 10, 2017 incident when John Doe's SIB resulted in him

suffering a nosebleed after twelve minutes of the non-effective and triggering blocking method of intervention.

Defendants argue that there is no evidence that John Doe's traumatic brain injury was caused by his SIB on October 10, 2017.  Contrary to Defendants' assertion, there is evidence in the record to demonstrate causation between Defendants' conduct and John Doe's injury. Dr. Brian Woodruff directly relates the brain trauma John Doe sustained on October 10, 2017 with Defendants' conduct.  *See* ECF No. 82, PageID.3053 (opining that "the trauma to John Doe's head and brain while staff allowed him to engage in unprotected self-injurious behavior at Bovenschen Elementary on October 10, 2017 was the proximate cause of John Doe suffering a trauma-induced seizure and traumatic brain injury."); *see also id*., PageID.3016 (opining that the Bovenschen staff "caused [John Doe] to suffer severe harm that he would not have otherwise suffered" by "using techniques such as blocking that were known to escalate the behavior . . . ."); *see also id.*, PageID.3044 (finding "blocking" maneuver likely "increased the likelihood and severity of [John Doe's] SIB, thus tragically prompting his resultant serious injuries.")

Staff were all trained months before the October 10, 2017 incident on the use of emergency physical restraint. They were repeatedly put on notice that the blocking technique coupled with allowing John Doe's SIB to continue unrestrained

for ten minutes or more could cause more harm to him.  Not only did John Doe's mother inform everyone in attendance at the October 4, 2017 PBSP meeting, but staff were put on notice on October 9, 2017 that blocking and allowing the SIB to continue for ten minutes without using the approved CPI restraint technique resulted in John Doe giving himself a bloody nose. *See* ECF No. 82, PageID.2703 (describing John Doe's SIB included "hitting his hand to his head and hit his knee to his head" and "punching his head/nose, smacking the side of his head" resulting in "a bloody nose about 12 minutes into behavior."). Based on the foregoing considerations, a reasonable trier of fact could conclude that Defendants Stuckey's, Mexico's and Sulkowski's deliberate indifference to John Doe's SIB was conscious shocking.

### 4) Conclusion

Here, the Court finds Defendants Stuckey, Mexico and Sulkowski are not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim. Qualified immunity protects state actors from § 1983 liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Whether a state-actor is entitled to qualified immunity, the Court must (1) "determine if the facts alleged make out a violation of a constitutional

right" and (2) "if that right is clearly established." *Martin v. City of Broadview Hts.*, 712 F.3d 951, 957 (6th Cir. 2013).

A reasonable trier of fact could find that Defendants Stuckey and Mexico violated John Doe's due process rights under the state-created danger exception. Defendant Sulkowski can be held liable as she was the Principal who "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct" of Stuckey and Mexico. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Defendant Sulkowski not only authorized the unconstitutional conduct of her subordinates, but required them to use only de-escalation techniques such as the triggering blocking to address John Doe's SIB.

Additionally, the state created danger exception has been clearly established as of at least 2015. *See Lipman v. Budish*, 974 F.3d 726, 750 m.13 (6th Cir. 2020). In *Lipman*, the Sixth Circuit noted that its precedent has long dictated that an individual has a constitutional right against a state official acting to increase an individual's risk of harm "with knowledge of or at least deliberate indifference to that increased risk." *Id.* Additionally, the Sixth Circuit has long held that conscience shocking behavior that results in a violation to a student's bodily integrity is an established constitutional right. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724-26 (6th Cir. 1996).

However, Defendants Bruss and Tanghe cannot be held liable under the state-created danger theory.  Individual liability under § 1983 must be based on a defendant's personal involvement in the alleged constitutional violation.  *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  The record before the Court demonstrates that neither Defendant Tanghe nor Defendant Bruss were involved in blocking John Doe during his SIB on October 10, 2017.  While Tanghe was in the classroom, she took no affirmative acts to increase the danger of injury to John Doe.  Bruss was not in the classroom at the time, and only responded once she had been called by Stuckey and Mexico after John Doe had suffered the seizure and traumatic brain injury.

Based on the foregoing, Defendants Stuckey, Mexico and Sulkowski are not entitled to summary judgment in their favor on Plaintiff's Fourteenth Amendment Due Process claim.

### C. *Monell* Claim

Defendants next argue that Plaintiff's *Monell* claim against MISD should be dismissed because Plaintiff cannot establish a constitutional violation, nor can she show that MISD is responsible for the alleged constitutional violation by way of its official policies, practices, or customs.

To establish a *Monell* claim under § 1983, the Plaintiff must demonstrate (1) a constitutional violation occurred; and (2) that the school district is responsible for

the constitutional violation. *Doe v. Claiborne Cnty.*, 103 F.3d at 505-06. The

Sixth Circuit has cited four ways that a plaintiff can establish *Monell* liability: "(1)

the municipality's legislative enactments or official agency policies; (2) actions

taken by officials with final decision-making authority; (3) a policy of inadequate

training or supervision; or (4) a custom of tolerance or acquiescence of federal

rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.

2005).

Here, Plaintiff asserts she can establish her *Monell* claim by demonstrating a

de facto policy of no restraint and a failure-to-train/inadequate supervision. First,

Plaintiff argues that Bovenschen school had a de facto policy of "no restraint."

However, there is no evidence in the record that the MISD had such a de facto

policy of "no restraint." Rather, this policy appears to have been implemented by

Principal Sulkowski's misunderstanding of MISD's seclusion and restraint policy,

CPI training and Michigan law. Contrary to Plaintiff's argument, the record

demonstrates that MISD did have a policy of using restraint in emergency

situations and that the Bovenschen staff were trained in accordance with this

policy. It was Defendant Sulkowski who implemented the faulty "no restraint"

policy in the beginning of the 2017 school year, despite MISD policy, CPI training

and Michigan law. Defendant Sulkowski did not have final decision-making

authority over MISD policy, she only had final decision-making authority at

Bovenschen school.  Her misguided interpretation of MISD policy, Michigan law and CPI protocols cannot be imputed to the school district.

However, Plaintiff's failure to train/inadequate supervision theory under *Monell* presents a closer question.  Here, there is record evidence that the Bovenschen staff were trained on the use of the two-person seated restraint and were not trained on the use of blocking as an appropriate de-escalation technique under the circumstances presented on October 10, 2017.  The record suggests that Defendant Sulkowski ignored this training and mandated that her staff use the wrong techniques when confronted with any form of SIB no matter its seriousness. In this regard, MISD's lack of adequate supervision concerning Bovenschen's implementation of a "no restraint" policy contrary to the CPI training and Michigan law might rise to a *Monell* violation.  In this case, however, it does not.

There is no evidence in the record that MISD's supervision of Defendant Sulkowski and her staff was so deficient as to demonstrate MISD's deliberate indifference to John Doe's constitutional rights.  Plaintiff has produced no evidence that MISD was on notice of past misconduct by Sulkowski and her staff concerning the proper use of restraint during episodes of SIB by students or John Doe in particular.  Thus, there is nothing in the record to suggest that MISD was aware of the need for closer supervision in regard to NVCI and CPI training at Bovenschen.

For these reasons, MISD is entitled to summary judgment on Plaintiff's *Monell* claim.

### D.  Gross Negligence[3]

The individual Defendants argue that they were not grossly negligent. Immunity under the Government Tort Liability Act (GTLA) does not apply "if the officer's, employee's, member's, or volunteer's conduct . . . [amounts] to gross negligence that is the proximate cause of the injury or damage." MICH. COMP. LAWS § 691.1407(2)(c). "Gross negligence occurs when a defendant's conduct is "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1408(a); *Kindl v. City of Berkley*, 798 F.3d 391, 402 (6th Cir. 2015).  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them." *McKeever v. Golfsbury Speedway, Inc.*, 225 N.W.2d 184, 185 (Mich. App. 1974).  Gross negligence is "a willful disregard for substantial risks." *Tarlea v. Crabtree*, 687 N.W.2d 333 (Mich. App. 2004).

In determining whether a defendant acted with gross negligence, courts must consider the totality of the circumstances.  *Kieft v. Barr*, 214 N.W.2d 838, 839

---

[3] Plaintiff agrees to dismiss her gross negligence claim against the MISD.

(Mich. 1974).  The determination whether an individual's conduct was grossly

negligent is generally a question of fact for the jury.  *Briggs v. Oakland Co*., 742

N.W.2d 136, 139 (Mich. App. 2007).  Courts must examine "the foreseeability of

consequences, and whether a defendant should be held legally responsible for such

consequences" when considering proximate cause.  *Ray v. Swagger*, 903 N.W.2d

366, 377 (Mich. 2017).

Defendants maintain they cannot be grossly negligent for failing to use a

physical restraint they were not permitted to use under the circumstances.  They

argue that Stuckey and Mexico believed that using a restraint while John Doe was

on the floor could restrict his breathing.  Defendants further assert that John Doe is

the proximate cause of his injuries, therefore the school employees cannot be found

grossly negligent.  Conversely, Plaintiff argues that the Defendants were grossly

negligent because they engaged in affirmative acts contrary to professionally

accepted standards by refusing to use restraint due to a faulty "no restraint" policy,

used the blocking tactic that Defendants knew would make the situation worse, and

allowed John Doe to beat his brain for fifteen minutes until he suffered a traumatic

brain injury and seizure.

Here, Defendants incorrectly argue that John Doe is the proximate cause of

his injuries.  While a court must determine whether a plaintiff was negligent and a

proximate cause of his own injuries, Defendants ignore the fact that John Doe

cannot be held to a reasonable person standard, because he is a child with cognitive impairments.  *Ray*, 501 Mich. at 74-75. The *Ray* court held that "[u]nlike adults who are held to the reasonable person standard, determining whether a child was negligent requires application of a subjective standard.  The court must assess whether the child acted with the degree of care that would be expected of a child of similar age, intelligence, capacity, and experience under the circumstances of the case." *Id*. at 75.  Defendants cannot argue that Plaintiff was the proximate cause of his injuries by ignoring his age and capacity.

Moreover, John Doe's injuries were foreseeable in light of his medical condition.  Evidence in the record suggests that Defendants' affirmative acts increased John Doe's risk of harm and they were the proximate cause of his harm. Their acts of blocking and failing to intervene with restraint for fifteen minutes while John Doe beat his brain foreseeably resulted in John Doe's injuries. Dr. Woodruff corroborates this conclusion. This is not a case where reasonable minds "could not differ on" the question of whether Defendants' acts were the most immediate and direct cause of John Doe's injuries.  Therefore, summary judgment in favor of Defendants is not appropriate on Plaintiff's gross negligence claim.  *Id*.

### E.  PWDCRA Claim

Finally, Defendants argue that Plaintiff's PWDCRA claim is preempted by the Michigan Special Education Act (MSEA), MICH. COMP. LAWS § 380.1701. The

Court need not resolve whether Plaintiff's PWCRDA claim is preempted by the MSEA because even if the Court were to conclude that the MSEA does not preempt Plaintiff's PWDCRA claim, her claim still fails.

Plaintiff has not come forward with any evidence that students with no SIB symptoms were treated more favorably than John Doe.  Plaintiff does not cite any authority in support of her claim.  Moreover, Plaintiff has not come forward with any evidence that John Doe was treated disparately compared to students who did not suffer from SIB, or that he was treated disparately because of his SIB.  This is insufficient to withstand Defendant's request for summary judgment on this claim. Defendants are entitled to judgment in their favor on Plaintiff's PWDCRA claim.

## IV.   CONCLUSION

 Accordingly, for the reasons articulated above, Defendants' Motion for Summary Judgment [#67] is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourth Amendment, *Monell*  and PWDCRA claims are DISMISSED WITH PREJUDICE.

Defendants Macomb Intermediate School District, Tammy Tanghe and Patricia Bruss are DISMISSED WITH PREJUDICE.

Plaintiff's Fourteenth Amendment and gross negligence claims against Defendants Cathy Sulkowski, Julie Stuckey[4] and Joanna Mexico remain for trial.

---

[4] Defendant Stuckey has remarried and her last name is now Sutherland.

The following dates shall govern in this matter:

| SECOND AMENDED SCHEDULING ORDER[5] | |
| --- | --- |
| **YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES** | |
| Recommended Continued Facilitation:[6] | January of 2025 (Order of Facilitation due by December 9, 2024)[7] |
| Settlement Conference with Magistrate Judge David R. Grand: | February of 2025 |
| Motions in Limine due: | February 6, 2025 |
| Final Pretrial Order due: | February 6, 2025 |
| Final Pretrial Conference: | February 13, 2025 at 2:00 p.m. |
| Trial: | Tuesday, March 18, 2025 at 9:00 a.m. |

SO ORDERED.

Dated:  November 21, 2024

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 21, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager

---

[5] The parties shall follow the practices and procedures set forth in Dkt. No. 54.

[6] Facilitation is only recommended by the Court.  All other dates are mandatory.

[7] The Proposed Order for Facilitation shall identify the date for facilitation and the facilitator.